RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0140p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————————

SUSAN M. FOX,

    *Plaintiff-Appellant,*

   *v.*

TRAVERSE CITY AREA PUBLIC SCHOOLS
BOARD OF EDUCATION, TRAVERSE CITY
AREA PUBLIC SCHOOLS, CHRISTINE M.
DAVIS, and ROBERT T. PETERS,

      *Defendants-Appellees.*

> No. 09-1688

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 07-00956—Robert J. Jonker, District Judge.

Argued: March 9, 2010

Decided and Filed: May 17, 2010

Before: DAUGHTREY, GILMAN, and KETHLEDGE, Circuit Judges.

—————————————

**COUNSEL**

—————————————

**ARGUED:** Carl J. Marlinga, MARLINGA LAW GROUP, PLLC, Clinton Township, Michigan, for Appellant. William Vogelzang, Jr., KLUCZYNSKI, GIRTZ & VOGELZANG, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Carl J. Marlinga, MARLINGA LAW GROUP, PLLC, Clinton Township, Michigan, for Appellant. William Vogelzang, Jr., Mark T. Ostrowski, KLUCZYNSKI, GIRTZ & VOGELZANG, Grand Rapids, Michigan, for Appellee.

—————————————

**OPINION**

—————————————

  MARTHA CRAIG DAUGHTREY, Circuit Judge. Plaintiff Susan M. Fox, a former special-education teacher employed by the defendant school system, appeals the district court's order granting summary judgment to the defendants in this First Amendment

1

retaliation action brought under 42 U.S.C. § 1983. The district court held that the case is controlled by the Supreme Court's decision in *Garcetti v. Ceballos*, 547 U.S. 410 (2006), and determined that, under *Garcetti*, the plaintiff's complaints to her supervisors about the size of her teaching caseload were not protected by the First Amendment. Specifically, the court held that the speech in question, if made by Fox at all, was made not in her role as a "public citizen" but as an employee, that it was made to her immediate supervisors, and that it did not address a matter of "public concern" but, rather, only the conditions of her employment. We agree, and we therefore affirm the decision of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

Fox was hired to teach at Blair Elementary School under a probationary contract for the school years 2005-2005 and 2006-2007. In February 2007, she was notified that her contract would not be renewed for the following year, based on documentation of numerous performance deficiencies dating back to early 2006. Those deficiencies included the failure to complete the required student Medicaid and IEP reports in an appropriate and timely manner, the unauthorized delegation of responsibilities to teaching assistants, and the failure to provide the minimum required instructional time to students. Fox's performance evaluations also indicated that the school had received complaints from parents that she was making inappropriate recommendations regarding medications for her students. She had been informed of these problems in periodic meetings with school officials during her probationary employment.

Fox disputed claims that her performance was deficient and maintained that she was terminated for voicing concerns to her supervisors, Blair Elementary School Principal Robert Peters and Special Education Director Kim Urbanski, that the size of her teaching caseload exceeded that allowable by law. It is undisputed that during the 2005-2005 school year, Fox carried a caseload of no more than the legal limit of 21 students. In the fall of 2006, however, Blair Elementary launched a targeted reading program designed to improve the reading skills of both general and special education students. Fox volunteered to participate in the reading program but was relieved of that responsibility after only four weeks because, according to Principal Peters, she was falling behind in her other responsibilities.

Fox maintained that her participation in the reading program had made her responsible for a total of 34 students in various classes, which by her calculation put her over the legal number of students to supervise. She further alleged that when she reported this non-compliance to Peters and Urbanski in September 2006, she encountered hostility that ultimately resulted in the notice of non-renewal she received in February 2007, almost five months later. Peters, on the other hand, denied that Fox had ever complained that her caseload violated the law at any time prior to the date he informed her that her contract would not be renewed. Fox conceded that she had never filed a formal grievance with her union. Moreover, nothing in the record indicates that she voiced concerns that her caseload was "illegal" outside the ordinary chain of command at her school.

Fox ultimately filed suit in federal court, alleging a violation of her right to free speech under the First Amendment and also seeking recovery under several state-law theories. The district court granted summary judgment to the defendants on the civil rights claim and dismissed the pendent state-law claims. The court held that Fox's statements to her supervisors were not entitled to First Amendment protection and, therefore, that even if she had been fired for making them, there was no violation of a clearly established right, as required by section 1983. Fox now appeals the district court's summary judgment order, arguing that there exists a genuine issue of material fact as to whether, in voicing her complaint about her caseload, she was speaking as a public citizen entitled to First Amendment protection.

## *DISCUSSION*

To prevail in the district court on her claim of retaliatory discharge in violation of the First and Fourteenth Amendments, Fox would have had to show (1) that her statements were protected under the First Amendment; (2) that she suffered an adverse employment action; and (3) that "the adverse action was motivated at least in part as a response to the exercise of [her] constitutional rights." *Nair v. Oakland County Cmty. Mental Health Auth.*, 443 F.3d 469, 477-478 (6th Cir. 2006) (quoting *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 715 (6th Cir. 2001)). The district court determined that Fox failed to establish that her speech was protected and, therefore, that the defendants were entitled to judgment in their favor as a matter of law.

The parties agreed below that Fox's retaliation claim is controlled by the Supreme Court's opinion in *Garcetti*, as did the district court. Indeed, the district judge concluded, "It's hard for me to see, frankly, a clear[er] case of Garcetti applying in the context of a public employee's speech." We agree.

In *Garcetti*, the Supreme Court recognized that citizens who enter government service "must accept certain limitations on [their] freedoms," including limitations on the scope of their First Amendment rights. 547 U.S. at 418. Observing that public employees "do not surrender *all* their First Amendment rights by reason of their employment," the Court held that the interest of a public employee "in commenting on matters of public concern" must be balanced against the interest of governmental employers "in promoting the efficiency of the public services it performs through its employees." *Id.* at 417 (emphasis added).

For a public employee's statements to receive First Amendment protection, the public employee must speak "as a citizen" and "address[] matters of public concern." *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 542 (6th Cir. 2007). "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Garcetti*, 547 U.S. at 421. Under *Garcetti*, "even employee speech addressing a matter of public concern is not protected if made pursuant to the employee's official duties." *Weisbarth*, 499 F.3d at 545. Thus, in reviewing a public employee's statement under *Garcetti*, we must consider both its content and context – including to whom the statement was made – to determine whether the plaintiff made the statement pursuant to her individual duties. *See id.*; *see also Haynes v. City of Circleville*, 474 F.3d 357, 362 (6th Cir. 2007).

Speech by a public employee made pursuant to *ad hoc* or *de facto* duties not appearing in any written job description is nevertheless not protected if it "owes its existence to [the speaker's] professional responsibilities." *Weisbarth*, 499 F.3d at 544 (quoting *Garcetti*, 547 U.S. at 421). In *Weisbarth*, for example, we concluded that a park ranger's statements about morale and performance issues to an outside consultant hired by the ranger department to assess these matters were made pursuant to her official duties, even though participating in the interview was an *ad hoc* duty not described in the ranger's official job

description. *Id*. at 543-44. Likewise, in *Haynes* we concluded that a police officer's memo to his superior officer expressing discontent about the financial cutbacks and changes to the canine-training program that he directed was not protected speech. *See* 474 F.3d at 365. The memo suggested that the cuts would open the police department to allegations of "negligence," "deliberate indifference," and "failure to train," *id.* at 360, but the plaintiff officer conceded that the new program complied with Ohio law. *Id.* at 365. In concluding that the plaintiff made these statements as a public employee rather than a private citizen, we cited the officer's involvement with the canine training program and the fact that he made the statements "solely to his superior." *Id.* at 364. The memo, therefore, communicated "nothing more than 'the quintessential employee beef: management has acted incompetently.'" *Id*. at 365 (quoting *Barnes v. McDowell*, 848 F.2d 725, 735 (6th Cir. 1998)).

Like the employee statements at issue in *Weisbarth* and *Haynes*, Fox's statements were made as a public employee rather than as a citizen and, therefore, do not merit First Amendment protection. As in *Haynes*, Fox's complaints were directed solely to her supervisor, not to the general public. She argues that because she did not control the number of students assigned to her class, her complaints about class size cannot have been made pursuant to her official duties. But the canine-training program administrator in *Haynes* did not control the level of funding allocated to his program, and yet we concluded that he made these statements as an employee rather than a citizen. It is clear – without any intricate parsing of Fox's job description – that her complaint about class size "owes its existence to" her responsibilities as a special education teacher. *Weisbarth*, 499 F.3d at 544.

Nor, despite her contention to the contrary, is Fox aided by our opinion in *See v. City of Elyria*, 502 F.3d 484, 493 (6th Cir. 2007), in which we held that a city police officer's statements to the FBI alleging corruption within the city police department were constitutionally protected as a matter of public concern. Because the plaintiff officer reported his employer's illegal acts to an outside law enforcement agency, rather than solely to his supervisors, we held that those statements were obviously not made pursuant to the plaintiff's official duties. *Id.*

Fox next urges us to look beyond our own circuit precedent to the decisions of our sister circuits decided in the education context. However, our post-*Garcetti* decisions in *Weisbarth* and *Haynes* are controlling and, as indicated above, fully support the district court's grant of summary judgment, even though neither case arises in the context of education. Moreover, the out-of-circuit cases on which Fox relies, *Posey v. Lake Pend Oreille School District*, 546 F.3d 1121 (9th Cir. 2008),[1] and *Cioffi v. Averill Park Central School District*, 444 F.3d 158 (2d Cir. 2006),[2] are irrelevant to our analysis in this case, because both Posey and Cioffi, the plaintiff employees, made statements outside the ordinary chain of command and, therefore, their speech did not involve – as here – statements made by a public employee only to her immediate supervisors. Of more immediate pertinence to Fox's claim is the Fifth Circuit's observation that "[c]ases from other circuits are consistent in holding that when a public employee raises complaints or concerns up the chain of command at his workplace about his job duties, that speech is undertaken in the course of performing his job." *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008).

Finally, we reject the plaintiff's contention that the district court erred in treating the constitutional status of her speech as a matter of law, rather than a question of fact for a jury. Prior to the issuance of its decision in *Garcetti*, the Supreme Court treated "the inquiry into the protected status of speech [as] one of law, not fact." *Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983). In *Garcetti*, however, the Court held that the

---

[1]In *Posey*, the court found that there was a genuine issue of material fact as to whether the plaintiff, a security officer at a public high school, spoke as a public employee or a private citizen and reversed the district court's grant of summary judgment to the defendants on plaintiff's First Amendment retaliation claim. 546 F.3d at 1129. The security officer wrote a letter to the school district chief administrative officer, superintendent, and other district administrators describing drug and weapons violations at the school and the principal's unresponsiveness to safety problems. *See id.* at 1124. The plaintiff "wrote the letter at home, with his own resources, on his own time, and of his own initiative," and following the letter he met with school district officials at his home outside school hours to discuss his concerns. *Id.*

[2]In *Cioffi*, the court, anticipating the Supreme Court's forthcoming ruling in *Garcetti*, held that the plaintiff teacher and athletic director spoke as a citizen rather than a public employee when he made statements about a hazing incident at his school. 444 F.3d at 167 n.3. The school district uncovered incidents of hazing and sexual assault among the members of the football team, acts for which several students and teachers were arrested. *See id.* at 161. The plaintiff wrote a letter to the superintendent and school board and held a public press conference criticizing the football coach's supervision of the team and the school district's response to the incident. *Id.*

question of whether a statement was spoken as a public employee or as a private citizen for First Amendment purposes was "a practical one," requiring a fact-specific inquiry into the "duties an employee  actually is expected to perform."  *Garcetti*, 547 U.S. at 424-25.  Unfortunately, whether the Court intended to retreat from the rule in *Connick* is not altogether clear from the language in *Garcetti*.

As the plaintiff correctly observes, the circuits are divided over "whether the inquiry into the protected status of speech remains one purely of law as stated in *Connick*, or if instead *Garcetti* has transformed it into a mixed question of fact and law." *Posey*, 546 F.3d at 1127.  The Third, Seventh, Eighth, and Ninth Circuits have concluded that "whether the speech in question was spoken as a public employee or a private citizen presents a mixed question of fact and law."  *Id.* at 1129; *see also Reilly v. City of Atlantic City*, 523 F.3d 216, 227 (3d Cir. 2008); *Davis v. Cook County*, 534 F.3d 650, 653 (7th Cir. 2008).  Other circuits have stated that this remains a "question [] of law for the court to resolve."  *Wilburn v. Robinson*, 489 F.3d 1140, 1149 (D.C. Cir. 2007); *see also Charles v. Grief*, 522 F.3d 508, 513 n.17 (5th Cir. 2008) ("even though analyzing whether *Garcetti* applies involves the consideration of factual circumstances surrounding the speech at issue, the question of whether [the plaintiff's] speech is entitled to protection is a legal conclusion properly decided at summary judgment"); *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202-03 (10th Cir. 2007) (district court is to determine "whether the employee speaks 'pursuant to (his) official duties'," "whether the subject of the speech is a matter of public concern," and "whether the employee's interest in commenting on the issue outweighs the interest of the state as employer").

This circuit split is, however, ultimately irrelevant to the disposition of this case. In our post-*Garcetti* opinions we have consistently described the question of whether, in a First Amendment retaliation action, a public employee's speech is protected as one of law, not one of both fact and law.  *See Haynes*, 474 F.3d at 362 (citing *Taylor v. Keith*, 338 F.3d 639, 643 (6th Cir. 2003) (public employee "must show that, as a matter of law, the speech at issue was protected"); *See*, 502 F.3d at 492 (citing *Connick*, 461

U.S. at 148 n.10) (whether an employee's speech is protected "is a question of law for the court to decide").

Moreover, in granting summary judgment in this case, the district court took as true all of the plaintiff's factual allegations. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"). The statements that Fox argues should receive protection under the First Amendment were made to her immediate supervisors at the school, and she does not dispute that the number of students assigned to her was directly related to the conditions of her employment. Even if the question were purely a question of fact, therefore, the district court properly granted summary judgment because the factual record presents no genuine issue for trial.

### *CONCLUSION*

For the reasons set out above, we conclude that the district court correctly determined that, under *Garcetti*, when the plaintiff complained to her supervisor about the number of students assigned to her supervision, she spoke as a public employee rather than a private citizen. As a result, her statements were not entitled to protection under the First Amendment, and her retaliation claim was properly dismissed upon entry of summary judgment in favor of the defendants. The judgment of the district court is, therefore, AFFIRMED.