NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0747n.06

Case No. 14-2291

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Nov 12, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| PATRICK DEVLIN, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| RICHARD KALM, ERIC T. BUSH, DALE E. | ) | MICHIGAN |
| BEACHNAU, and MICHAEL DAVIS, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |

BEFORE: GIBBONS, SUTTON, and KETHLEDGE, Circuit Judges.

PER CURIAM. Patrick Devlin, a state employee, filed two lawsuits—one against the Michigan Attorney General seeking to compel him to enforce liquor laws against Native American tribes and one against the state agency that employed him seeking a promotion—and spoke to a newspaper about both lawsuits. He allegedly was fired in response. Devlin then filed this § 1983 action, claiming that the State violated his First (and Fourteenth) Amendment rights by firing him in retaliation for his protected speech. Because clearly established First Amendment law protected Patrick Devlin's speech and because it remains an open question whether that speech was a substantial or motivating factor in Devlin's termination, the district court properly denied the state defendants' summary judgment motion based on qualified immunity.

The Michigan Gaming Control Board employed Devlin from September 2001 to July 2008. For the majority of that time, Devlin was the compliance officer for the Indian Gaming Section, where he monitored Native American tribal casinos' adherence to various laws. Over the course of his employment, Devlin expressed frustration with Michigan's failure to enforce liquor-licensing laws against tribal casinos. When his superiors failed to take action, Devlin filed a state mandamus action seeking to compel the Michigan Attorney General to enforce liquor laws against the tribes. He also filed a state employment claim (for alleged wrongful failure to promote him) against the Michigan Gaming Board and other state agencies. Both lawsuits were filed on June 3, 2008. Devlin spoke to the press about both lawsuits. He accused the Attorney General of being a "deadbeat" when it came to enforcing the liquor laws and of giving tribes "a free pass" when it came to the liquor laws. R. 115-4 at 5. Devlin's comments were published on June 4, the day after he filed the lawsuits, in several newspapers. The Board suspended him on June 6. After written submissions and a disciplinary conference, the Board dismissed Devlin on July 24.

Devlin filed this § 1983 action in response. Among other claims, he contended that members of the Michigan Gaming Control Board and other state officers and employees had violated his First Amendment rights. This is the fourth time (so far) this case has reached our circuit. In the third appeal, the only one relevant here, we upheld the district court's denial of the officers' motion to dismiss Devlin's First Amendment retaliation claim based on qualified immunity. *Devlin v. Kalm*, 531 F. App'x 697, 699 (6th Cir. 2013) (*Devlin III*). After the parties obtained the discovery they needed, the district court denied the state defendants' motion for summary judgment. *Devlin v. Kalm*, No. 08-13421, 2014 WL 4545686, at *3 (E.D. Mich. Sept. 12, 2014).

We review afresh a district court's denial of a motion for summary judgment and read all reasonable inferences from the record in favor of the non-movant—here Devlin. *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004). At issue in a qualified immunity case like this one are two questions: Did the officers violate Devlin's constitutional rights and were those rights clearly established when the state defendants fired Devlin on July 24, 2008? *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

*Constitutional violation?* In filing this retaliation lawsuit, Devlin claimed that the officers violated his free speech rights by firing him in response to his statements in the lawsuits and to his comments to the media about those lawsuits. The first order of business is to address a legal question: Is the employee's speech protected under the First Amendment? *Fox v. Traverse City Area Pub. Sch. Bd. of Educ.*, 605 F.3d 345, 350 (6th Cir. 2010). We consider (1) whether the speech addressed a matter of public concern, (2) whether the public employee spoke outside the duties of employment, and (3) whether the interests of the public employee in commenting on matters of public concern outweigh valid state interests. *Connick v. Myers*, 461 U.S. 138, 142 (1983); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). The second order of business is to address a factual question: Was the speech "a substantial or motivating factor in the adverse employment action"? *Rodgers v. Banks*, 344 F.3d 587, 602–03 (6th Cir. 2003).

*Was Devlin's speech protected?* The First Amendment protects Devlin's speech. One, his speech self-evidently addressed a matter of public concern—regulation of tribes located within Michigan. *See Connick*, 461 U.S. at 142. Two, Devlin spoke "outside the duties of employment"—as a citizen in other words and not in connection with his official duties. *Garcetti v. Ceballos*, 547 U.S. 410, 424 (2006). He did not make this speech in carrying out

official duties, and indeed he did not file the lawsuits against the State in any official capacity. He filed both lawsuits as an individual.

What of the third question? Did Devlin's interests in commenting on matters of public concern outweigh any state interests? The district court never addressed this issue because it thought this was "a question of fact for the jury." 2014 WL 4545686, at *3. That was wrong. *Pickering* balancing is "a matter of law for the court to decide." *Farhat v. Jopke*, 370 F.3d 580, 593 (6th Cir. 2004); *see Fox*, 605 F.3d at 350. Because we may "affirm on any basis supported by the record," *EA Mgmt. v. JP Morgan Chase Bank, N.A.*, 655 F.3d 573, 575 (6th Cir. 2011), and because we have taken this path before even when the district court did not address the issue, *see, e.g.*, *Summers*, 368 F.3d at 886–88; *Devlin III*, 531 F. App'x at 703, we will resolve the point here—particularly in the context of a case that is seven years old and has already generated four appeals.

Devlin's grounds for speaking out were substantial. "[I]f an employee's speech substantially involve[s] matters of public concern, an employer may be required to make a particularly strong showing that the employee's speech interfered with workplace functioning before taking action." *Leary v. Daeschner*, 228 F.3d 729, 737–38 (6th Cir. 2000); *see Waters v. Churchill*, 511 U.S. 661, 674 (1994). Devlin's concerns mattered to the public. In his discussions with the press, he accused the State of systematically refusing to enforce the law against Native American tribes. And Devlin largely spoke about allegations contained in his mandamus lawsuit which sought to compel enforcement of criminal law. Discussion of such issues—all already addressed in publicly filed lawsuits—involves matters of public concern and thus demands a "strong" showing of countervailing state interests.

The officers have failed to make that showing. Here is what the Supreme Court has asked us to consider: "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Rankin v. McPherson*, 483 U.S. 378, 388 (1987). The officers claim that an affidavit from one of the defendants, Richard Kalm, shows that Devlin disrupted state interests in these ways. Nothing in the affidavit or elsewhere in the record, however, demonstrates that Devlin's statements actually (as opposed to potentially) disrupted relationships among direct co-workers. Nor does the affidavit or anything else in the record establish a detrimental impact on the working relationship between the Attorney General and the Gaming Control Board. Devlin's statements also did not interfere with the Board's regular operations. So far as the record shows, the Board continued to enforce the laws and regulations that it is required to enforce. The fact that the Board engaged in conversations with two tribes that were concerned about their continuing compliance with the law does not establish interference with the Board's operations. Answering questions about compliance is presumably something that the Board, as the entity that enforces "multiple Tribal gaming compacts," R. 115-13 at 3, does on a regular basis. And Devlin's "deadbeat" comment, *id.* at 5–6, while doubtless in poor taste, was unlikely to undermine the Attorney General's ability to do his job. In the last analysis, Devlin shows a substantial interest in speaking out and the officers cannot show a sufficient countervailing state interest. His speech was protected.

*Was Devlin's speech a substantial or motivating factor in the State's decision to fire him?* This question by contrast is one of fact, suitable for resolution by a jury unless just one resolution is reasonable. *See Rodgers*, 344 F.3d at 602–03. Several facts push this case over the summary

judgment threshold and would permit a reasonable jury to find for Devlin. When Eric Bush, another defendant in this case, formally requested an investigation of Devlin, he focused on Devlin's comments to the press—suggesting his speech (as opposed to other considerations) motivated the firing. Likewise, at Devlin's investigatory conference, his inquisitors asked primarily about his statements to the press. The timeline of events does not help the State's cause either. The State suspended Devlin two days after his comments were published, and he was dismissed soon afterward. *See Evans-Marshall v. Bd. of Educ.*, 624 F.3d 332, 339–40 (6th Cir. 2010).

*Clearly established?* Devlin also must show that his First Amendment rights in this setting were clearly established when the agency fired him on July 24, 2008. This is rarely an easy question given the fact-specific nature of *Pickering*-balancing inquiries, but Devlin satisfies the test in this instance. It was well established that Devlin's speech on the regulation of tribes addressed a matter of public concern. *See Roberts v. Ward*, 468 F.3d 963, 968 (6th Cir. 2006). And it was well established that he spoke outside the duties of his employment. *See Garcetti*, 547 U.S. at 413–15; *Haynes v. City of Circleville*, 474 F.3d 357, 364 (6th Cir. 2007).

As to the third question, our *Pickering* caselaw points in the same direction. It was well established by mid-2008 that Devlin's speech "substantially involved matters of public concern" and thus the officers had to "make a particularly strong showing that the employee's speech interfered with workplace functioning before taking action." *Leary*, 228 F.3d at 737–38. And a reasonable officer could not find that Devlin's speech was sufficiently disruptive of the internal workplace—which *Pickering* balancing is primarily focused on—to lose protection. Before these events transpired, we had already found substantially more disruptive employee conduct to be protected. To pick one example, *Scarbrough v. Morgan County Board of Education*,

470 F.3d 250, 258 (6th Cir. 2006), protected speech by a school superintendent that "aroused tensions" between the school board and the superintendent and "led to an inefficient work atmosphere." *See also Murphy v. Cockrell*, 505 F.3d 446, 448, 450–51 (6th Cir. 2007); *Leary v. Daeschner*, 349 F.3d 888, at 894, 900 (6th Cir. 2006).

Nor could a reasonable officer think that fielding concerns from two tribes—something the Gaming Control Board presumably does on a regular basis—"interfere[s] with the regular operation" of the Board. *Rankin*, 483 U.S. at 388. In scenarios such as this one—where the violation of a constitutional right is "so obvious that a materially similar case would be unnecessary"—a case directly on point (which is lacking here) is not required. *Paterek v. Vill. of Armada*, 801 F.3d 630, 651–52 (6th Cir. 2015). Devlin's First Amendment rights were clearly established.

That leaves a few peripheral matters and a few other arguments by the state officers. The district court thought that the law-of-the-case doctrine required it to adhere to several conclusions we reached at the motion-to-dismiss stage in *Devlin III*. 2014 WL 4545686, at *2–3. But a decision "on a motion to dismiss does not establish the law of the case for purposes of summary judgment, when the complaint has been supplemented by discovery." *McKenzie v. BellSouth Telecomm., Inc.*, 219 F.3d 508, 513 (6th Cir. 2000). In this instance, considerable discovery supplements the pleadings, leaving the law-of-the-case doctrine with no role to play. Even though the district court applied the law-of-the-case doctrine, it reached the right outcome nonetheless. Yes, the district court was wrong to say that this court had already held that Devlin's speech was a substantial or motivating factor in his termination. That was, is, and remains a jury question.

Devlin and the officers also spar over whether Devlin disclosed confidential information when he spoke to the press. The answer is by no means clear. Best we can tell, most (if not all) of the information that Devlin relied on in his comments to the press was contained in the public complaints in his state-law cases. If we are wrong (at most in part), that is for the jury to take up in deciding whether Devlin's speech was a substantial or motivating factor in his employment termination. "[Q]uite apart from *Pickering* balancing, wrongdoing that an employee admits to . . . may be a valid basis for termination or other discipline." *Lane v. Franks*, 134 S. Ct. 2369, 2381 n.5 (2014). If the officers were motivated to terminate Devlin because they were "relying on [the Board's] confidentiality policies" that Devlin signed and allegedly violated, Appellants' Br. 40, that is a powerful ground for a jury to reject Devlin's claim. At this point, however, that is a call for the jury, not for us.

The officers focus on Devlin's quip that the Attorney General was a "deadbeat," arguing that this statement was sufficiently disruptive to lose First Amendment protection. But we must place this comment in context. Devlin indicated that the Attorney General was a deadbeat "*when it comes to enforcement action* against the tribes." R. 115-4 at 3, 5 (emphasis added). His "deadbeat" comment was part and parcel of his critique of the State's failure to enforce the law; he merely used the word "deadbeat" to describe his broader concerns. Even though a single word or phrase—plucked from its context—may seem particularly strong, it may yet be protected. *See, e.g.*, *Pickering*, 391 U.S. at 576 (holding protected a letter to the editor that accused the government employer of "totalitarianism"); *Kiessel v. Oltersdorf*, 459 F. App'x 510, 514 (6th Cir. 2012) (holding protected a letter to the editor that accused the government employer of engaging in "unlawful" and "illegal" conduct). As such, we see no reason to

analyze this single word separately from the entirety of Devlin's statements—which we already have found to be protected under clearly established law.

At some places in his brief, Devlin suggests that he was fired in part because he filed the mandamus lawsuits, not merely because he spoke to the press. Whether this retaliation claim is brought under the Free Speech Clause or the Petition Clause of the First Amendment, we apply the same analysis. *Borough of Duryea v. Guarnieri*, 131 S. Ct. 2488, 2495–96 (2011). The officers concede (at least for the sake of argument on appeal) that the lawsuits themselves were protected as whistleblower lawsuits under state law, and are also protected by the First Amendment. Even assuming that Devlin's lawsuits were protected by the First Amendment, there is no indication that the lawsuits were a substantial motivating factor in his termination. Everything in the record—from the letter triggering Devlin's investigation to the officers' investigatory conference with Devlin—indicates that his speech to the press, not the act of filing the lawsuits, formed the basis of termination.

Mandamus actions, it bears adding, differ from traditional lawsuits filed by an employee against an employer. Unlike a traditional employment-law action, they seek a court order compelling a public official to take government action—here to compel the Michigan Attorney General to enforce the State's liquor-licensing laws against tribal casinos. We need not decide today—because the State has not argued the point—whether the same First Amendment protections associated with other employment-based actions apply to a mandamus action filed by an employee against a state employer. Our ruling thus does not speak to the propriety of using a mandamus action to compel a state official to take a particular action on which he and the employer disagree.

Last of all, Devlin argues that the district court should have granted summary judgment *for him*. The problem is, Devlin did not file a cross-appeal from the district court's denial of his summary judgment motion. And rightly so: With some exceptions not relevant here, we have jurisdiction only over an appeal from a final decision of a district court, 28 U.S.C. § 1291, and a "denial of summary judgment is generally not a final judgment," *Hoover v. Radabaugh*, 307 F.3d 460, 465 (6th Cir. 2002).

For these reasons, we affirm the district court's denial of the officers' summary judgment motion on the basis of qualified immunity and remand the case for still further proceedings.