RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0201p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

RAYMOND C. BARTON,

*Plaintiff-Appellee*,

*v.*

SHELDON NEELEY,

*Defendant-Appellant*.

No. 23-2089

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:23-cv-10051—Nancy G. Edmunds, District Judge.

Argued: July 23, 2024

Decided and Filed: August 27, 2024

Before: GILMAN, GRIFFIN, and MATHIS, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Chelsea S. Down, THE WILLIAMS FIRM, P.C., Grand Blanc, Michigan, for Appellant. Stacey L. Heinonen, ARNOLD E. REED & ASSOCIATES, P.C., Southfield Michigan, for Appellee. **ON BRIEF:** Chelsea S. Down, Kendall B. Williams, THE WILLIAMS FIRM, P.C., Grand Blanc, Michigan, for Appellant. Stacey L. Heinonen, Arnold E. Reed, ARNOLD E. REED & ASSOCIATES, P.C., Southfield Michigan, for Appellee.

_____

## OPINION

_____

GRIFFIN, Circuit Judge.

Two young African American boys died after two City of Flint firefighters failed to properly sweep a burning house. Then-City Fire Chief, plaintiff Raymond Barton, tried to

discharge the firefighters for gross misconduct, but Flint's Mayor, defendant Sheldon Neeley, intervened and allegedly covered up the firefighters' malfeasance to advance his support from the firefighters' union in an upcoming election. When Chief Barton refused Mayor Neeley's directives to cover up the malfeasance, Neeley fired Barton. In this lawsuit, Barton claims that his termination constitutes retaliation in violation of his First Amendment rights. The district court denied Neeley's motion to dismiss on qualified-immunity grounds, spurring this interlocutory appeal. Because Barton plausibly pleaded a violation of his First Amendment rights, and it is clearly established that public employees cannot be compelled to make false, politically motivated statements on matters of public concern in response to threats of retaliation, we affirm the district court's denial of qualified immunity to Neeley.

## I.

The following facts are alleged in the operative complaint, which we accept as true for purposes of the motion to dismiss. *Mynatt v. United States*, 45 F.4th 889, 893 (6th Cir. 2022).

In May 2022, six Flint firefighters responded to a house fire and were informed that residents likely were still in the home. Two of those firefighters, Daniel Sniegocki and Michael Zlotek, entered the home to search for the residents. Sniegocki and Zlotek claimed that they thoroughly searched all the rooms on the second floor using infrared equipment and thermal-imaging cameras, and they subsequently declared the home "all clear." A few minutes later, however, other firefighters entered the home and immediately found two African American boys, visible to the naked eye, lying on the floor in a second-floor bedroom. The boys eventually died from the fire.

Barton, who was the City's Fire Chief at that time, concluded that Sniegocki and Zlotek lied about their search efforts—potentially due to racial animus. He noted that the boys were African American while Sniegocki and Zlotek are Caucasian, the boys were readily observable, and Sniegocki and Zlotek refused to cooperate with the investigation. So Barton recommended to the city council and city officials, including Mayor Neeley, that Sniegocki and Zlotek be suspended without pay pending a final investigation and that they be discharged at the conclusion of that investigation.

Neeley disagreed.  He instructed Barton to change the recommendation by "alter[ing] official reports to disguise the firefighters' misconduct, suspend[ing] the firefighters with pay, and drop[ping] his recommendation that they be discharged."  Politics allegedly motivated Neeley's orders to Barton:  Neeley was running for re-election and needed the support of the firefighters' union, which he did not believe he would get if Barton terminated Sniegocki and Zlotek's employment.  Barton refused, telling Neeley that, as Fire Chief, he had a duty to be truthful to the public, and "in his personal capacity, [he] was unwilling to make false statements or profess professional judgments that he did not actually hold."  Specifically, Barton alleges that he was "unwilling to participate in a cover-up of firefighter misconduct that was likely motivated by racism."

So Neeley acted on his own, "unilaterally and surreptitiously chang[ing] [Barton's] official recommendation."  Neeley also "instructed Chief Barton to make a public announcement saying that he initiated the change and agreed with it."  Again, Barton refused Neeley's demands and "reminded Mayor Neeley [that] he would not make false statements."  At a subsequent city council meeting, Barton "explained that he had not changed his recommendation and that he wanted to discharge Sniegocki and Zlotek from the fire department."

Meanwhile, Neeley was re-elected as Mayor.  Nine days later, he allegedly "called Chief Barton into his office and told Chief Barton to resign as fire chief or be fired because Chief Barton had refused to serve Mayor Neeley's personal interests by participating in the cover-up of the firefighters' misconduct."  Barton refused, so Neeley terminated Barton's employment.

Barton contends in this lawsuit, brought under 42 U.S.C. § 1983, that his firing constitutes retaliation in violation of the First Amendment.  Neeley moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), arguing in relevant part that Barton failed to plausibly plead this claim, and alternatively, that he was entitled to qualified immunity. The district court denied Neeley's motion, and Neeley timely filed a notice of interlocutory appeal.

II.

We review de novo a district court's denial of a motion to dismiss based on qualified immunity. *Anders v. Cuevas*, 984 F.3d 1166, 1174–75 (6th Cir. 2021). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to state a "claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see also Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 562 (6th Cir. 2011) (explaining that in qualified-immunity appeals, "[w]e apply the ordinary standard used in reviewing motions to dismiss, accepting well-pled factual allegations as true"). "A claim is plausible on its face" if the pleaded "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (citation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Notably, "a well-pleaded complaint may [survive a motion to dismiss] even if . . . recovery [seems] very remote and unlikely." *Stratton v. Portfolio Recovery Assocs. LLC*, 770 F.3d 443, 447 (6th Cir. 2014) (internal quotation marks omitted). When considering a motion to dismiss, we must accept as true all factual allegations in the complaint, *see Napolitano*, 648 F.3d at 369, and must read the complaint's allegations "as a whole," *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 47 (2011).

III.

A.

The sole issue on appeal is whether Mayor Neeley is entitled to qualified immunity at the pleadings stage. Qualified immunity is an affirmative defense that protects public officials, in certain circumstances, from liability for civil damages when they violate a person's constitutional rights. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). We ask two questions to determine whether a public official is entitled to qualified immunity: (1) whether the facts alleged support a violation of the plaintiff's constitutional rights, and (2) if they do, whether that

right was clearly established at the time of the defendant's alleged misconduct.  *Id.* at 232; *LaPlante v. City of Battle Creek*, 30 F.4th 572, 578–79 (6th Cir. 2022).  If the public-official defendant did not violate a constitutional right, or if he did but the right was not clearly established at the time of the violation, then the defendant is entitled to qualified immunity.  *See Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).  It is "generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity."  *Guertin v. Michigan*, 912 F.3d 907, 917 (6th Cir. 2019) (citation omitted).  This case is no exception.

## B.

Beginning with prong one of the qualified-immunity analysis, we hold that Barton plausibly alleged that he engaged in conduct protected by the First Amendment and that Neeley retaliated against him for doing so.[1]

## 1.

As a public employee, Barton receives limited First Amendment protections.  "[G]overnment offices could not function if every employment decision became a constitutional matter," *Connick v. Myers*, 461 U.S. 138, 143 (1983), so a public employee's First Amendment rights are narrower than those of "the citizenry at large," *Mayhew v. Town of Smyrna*, 856 F.3d 456, 462 (6th Cir. 2017).  Nevertheless, "citizens do not surrender their First Amendment rights by accepting public employment."  *Lane v. Franks*, 573 U.S. 228, 231 (2014).  Therefore, "a state cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression."  *Connick*, 461 U.S. at 142.  As such, despite these narrower rights, "the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern."  *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006).

---

[1]A plaintiff alleging a § 1983 claim must prove two elements:  "First, a plaintiff must allege that a defendant acted under color of state law.  Second, a plaintiff must allege that the defendant's conduct deprived the plaintiff of rights secured under federal law."  *Handy-Clay v. City of Memphis*, 695 F.3d 531, 539 (6th Cir. 2012).  Neeley does not contest that he acted under color of state law, so we must decide only whether Barton sufficiently alleged that Neeley deprived him of a federal right.

Keeping these principles in mind, a public employee's speech is constitutionally protected only if it passes a three-part test. *Handy-Clay v. City of Memphis*, 695 F.3d 531, 540 (6th Cir. 2012). Barton must show: (1) he spoke as a private citizen rather than pursuant to his official duties; (2) his speech involved a matter of public concern; and (3) his speech interest outweighs "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Mayhew*, 856 F.3d at 462 (citation omitted); *Handy-Clay*, 695 F.3d at 540. On appeal, Neeley contests only whether Barton plausibly alleged that he spoke in his private, and not his official, capacity.

Public employees' statements made "pursuant to their official duties," rather than in their capacities as private citizens, are not protected by the First Amendment and therefore are subject to "employer discipline." *Garcetti*, 547 U.S. at 421. But a public employee's speech that "simply relates to public employment or concerns information learned in the course of public employment" may be protected. *Lane*, 573 U.S. at 239. "[T]he question of whether a statement was spoken as a public employee or as a private citizen for First Amendment purposes [is] 'a practical one,' requiring a fact-specific inquiry into the 'duties an employee actually is expected to perform.'" *Fox v. Traverse City Area Pub. Schs. Bd. of Educ.*, 605 F.3d 345, 350 (6th Cir. 2010) (quoting *Garcetti*, 547 U.S. at 424–25). In conducting this inquiry, we look to the "content and context" of the statement, *id.* at 348, consulting several non-exhaustive factors, including "the speech's impetus; its setting; its audience; and its general subject matter," *Mayhew*, 856 F.3d at 464. We have also considered whether the speech was made within or outside the "ordinary chain of command." *Fox*, 605 F.3d at 349–50. In sum, "the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech. The critical question . . . is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane*, 573 U.S. at 240.

2.

To determine whether Barton spoke in his private or public capacity, we must first determine exactly what speech is at issue. We first focus on Barton's speech at the city council meeting. The complaint alleges that "Barton addressed the meeting and explained that he had

not changed his recommendation and that he wanted to discharge Sniegocki and Zlotek from the fire department." It further provides his reasoning behind these statements: "Barton believed that an honest response to the[] citizen complaints [at the meeting] was necessary to maintain public confidence in the fire department," especially given "the history of racism by City officials." The complaint does not plead that Barton vocalized these concerns at the city council meeting—indeed, it characterizes them as "belie[fs]."

Based on the audience, setting, and subject matter, Barton's reporting on the potential discipline of firefighters during a city council meeting was an official duty of the Fire Chief. After all, Flint's City Charter and Code of Ordinances empowers the Fire Chief to oversee the fire department, including its employees. *See* Flint City Charter § 4-203(F) (2018) (providing that a duty of the head of the fire department is "supervision and discipline" of employees); City of Flint Code of Ordinances § 19-21 (2012) (providing that the Fire Chief has "direct and immediate control and management of the Fire Department").[2] Thus, Barton's speech at the city council meeting, which addressed the incident with Sniegocki and Zlotek and the resulting report, was not speech that Barton made as a private citizen, so it cannot give rise to a First Amendment retaliation claim.

Barton resists this conclusion, claiming that he explained why he would not alter his recommendation and that such explanations were private speech. We disagree for two reasons. First, even accepting the factual allegations in the complaint as true, Barton does not plead that he publicly voiced his rationale—i.e., the alleged racial issues underlying the firefighters' misconduct and the Mayor's cover-up scheme—for why he wanted to discipline Sniegocki and Zlotek. Rather, he separately alleges what he "explained" (that he wanted to discipline Sniegocki and Zlotek) versus what he "believed" (that he should be honest with the public in light of city officials' history of racism). *See Believe*, Black's Law Dictionary (12th ed. 2024) (defining "believe" as "[t]o feel certain about the truth of . . . [t]o think or suppose"). Second,

---

[2]When reviewing rulings on motions to dismiss brought under Rule 12(b)(6), we may consider and take judicial notice of matters of public record, as well as items appearing in the record of the case. *Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023). We consider these public records because they are readily available on the City of Flint's website and are contained in the district court's record. *See* Flint City Charter (2018), *available at* https://www.cityofflint.com/wp-content/uploads/2022/12/Flint-Charter-Searchable.pdf. And in any event, Barton does not contest Neeley's reliance on these documents.

even if Barton had sufficiently pleaded that he expressly stated these thoughts, he was still addressing the public in his capacity as Fire Chief regarding the discipline of his subordinate firefighters. So Barton's statements at the city council meeting are not protected speech, and the district court erred by concluding otherwise.

3.

However, Barton's speech at the city council meeting is not the only speech at issue in this case. Barton's relevant speech also included (1) his refusal to change his report on his own, and (2) his refusal to make a public announcement saying that he initiated and agreed with the changed report. Indeed, Barton pleads that these *refusals* ultimately led to the termination of his employment. It is well established that the First Amendment protects "both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). After reviewing the content and context of this refusal-to-speak conduct, *Fox*, 605 F.3d at 348, we conclude that Barton sufficiently alleged that his unwillingness to lie in order to further Neeley's political campaign was not within the scope of his official duties, *see Boulton v. Swanson*, 795 F.3d 526, 534 (6th Cir. 2015) (explaining that the "exception to First Amendment protection"—speech made pursuant to one's official duties—"must be read narrowly").

The Fire Chief serves "the Mayor, City Council[,] and the citizens of the City of Flint" with the administration and management of the fire department. Barton did not refuse to change his report as part of that overarching task (for instance, as part of a disagreement with an official policy of Flint). Instead, he refused to issue a false report that he believed had an underlying racial animus to help Neeley's mayoral re-election bid; plainly, his command as Fire Chief does not include aiding an official in an election campaign. Such refusals fall outside the scope of Barton's ordinary duties and are therefore protected by the First Amendment. *See Jackler v. Byrne*, 658 F.3d 225, 240 (2d Cir. 2011) (holding that "[a public employee] had a strong First Amendment interest in refusing to make a report that was dishonest").

Neeley disagrees, arguing that Barton's "refrain from engaging in speech that owed its existence to his official job duties . . . is not protected speech." But that argument ignores the context of and reasoning behind Barton's refusals to speak. That Barton learned of Neeley's

demands to speak strictly because of Barton's public employment is not dispositive. *See Lane*, 573 U.S. at 240. The "critical question" is whether Barton's official duties included taking actions that furthered Neeley's reelection efforts. *See id.* At most, Barton's refusals of Neeley's threats "merely concern[ed]" his duties as Fire Chief, which is not enough to constitute public speech. *See id.*; *Boulton*, 795 F.3d at 534; *Jackler*, 658 F.3d at 241 ("In the context of the demands [by a superior] that [a public employee] retract his truthful statements and make statements that were false, we conclude that his refusals to accede to those demands constituted speech activity that was significantly different from the mere filing of his initial [r]eport.").

In sum, Barton was (refraining from) speaking in his capacity as a private citizen when he declined to help Neeley win re-election and cover up racism within the fire department, which he alleges caused his termination as Fire Chief. So we affirm the district court's holding that Barton plausibly alleged a violation of his constitutional rights. *See Handy-Clay*, 695 F.3d at 538 ("We may affirm the district court's determination on any grounds, including grounds not relied upon by the district court." (internal quotation marks omitted)).

## C.

Turning to the second prong of the qualified-immunity analysis, we hold that it is clearly established that public employees cannot be compelled to make false statements on matters of public concern in response to threats of retaliation. Neeley is therefore not entitled to qualified immunity in this procedural posture.

In determining whether a right is clearly established, we look to the law of the Supreme Court, then this circuit, and then other circuits. *Cahoo v. SAS Analytics, Inc.*, 912 F.3d 887, 898 (6th Cir. 2019). "A right is clearly established if the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (internal quotation marks and brackets omitted). Although clearly established law cannot be defined "at a high level of generality," *Godawa v. Byrd*, 798 F.3d 457, 467 (6th Cir. 2015) (citation omitted), a case with near-identical facts need not exist for a right to be clearly established, *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam). Indeed, "an official can be on notice that his conduct violates established law even in novel factual situations." *Cahoo*, 912 F.3d at 898

(citation omitted); *see also District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018) ("Of course, there can be the rare 'obvious case,' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." (citation omitted)). "[T]he *sine qua non* of the 'clearly established' inquiry is 'fair warning.'" *Baynes v. Cleland*, 799 F.3d 600, 612–13 (6th Cir. 2015) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). Given these principles, "[t]he relevant inquiry is 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* at 610 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

Any reasonable citizen, let alone a publicly elected official, would know that threatening a government employee to make false statements on a matter of public concern—rooted in the official's own personal campaign interest and that would have covered up public employees' discriminatory conduct—or face a loss of employment would violate multiple clearly established First Amendment principles. First, "it is well-established that a public official's retaliation against an individual exercising his or her First Amendment rights is a violation of § 1983." *Barrett v. Harrington*, 130 F.3d 246, 264 (6th Cir. 1997). And this right extends to public employees. *Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 675 (1996) ("The First Amendment's guarantee of freedom of speech protects government employees from termination *because of* their speech on matters of public concern."). Second, as previously highlighted, the First Amendment protects "both the right to speak freely and the right to refrain from speaking at all." *Wooley*, 430 U.S. at 714. Again, this right protects public employees. *See Meriwether v. Hartop*, 992 F.3d 492, 503 (6th Cir. 2021) (holding that a public university violated a professor's First Amendment rights by compelling him to use students' preferred pronouns); *cf. Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 585 U.S. 878, 884–86 (2018) (holding that compelling public employees to subsidize a union "violates [their] free speech rights . . . by compelling them to subsidize private speech on matters of substantial public concern"). In sum, because "[s]peech by citizens on matters of public concern lies at the heart of the First Amendment," public employees cannot be compelled to speak, and in turn, they cannot be retaliated against when they choose not to speak on matters of public concern. *Lane*, 573 U.S. at 235.

Given these clearly established principles, we hold that Neeley compelled Barton to take a position on a matter of public concern with which Barton disagreed:  he demanded that Barton "make a public announcement saying that he initiated [Neeley's] change [in the report] and agreed with it" or else be fired for "refus[ing] to serve Mayor Neeley's personal interests by participating in the cover-up of the firefighters' misconduct."  And when Barton refused, Neeley fired Barton, unconstitutionally retaliating against him.  *See Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 715–19 (6th Cir. 2001) (explaining that eliciting a public employee's spoken disagreement with the employer's policy, and thereafter terminating him, violated multiple First Amendment rights—including the rights to be free from retaliation and compelled speech— because "the conduct that led to [the plaintiff's] firing was his unwillingness to agree fully with the policy. . . [and] this mental dissent could be interpreted as protected by the First Amendment").  The Supreme Court and this circuit have found, several times, that when public employees were fired or disciplined for speaking on matters of public concern related to their employment, their First Amendment rights were violated (or they at least pleaded such a violation).  *E.g.*, *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 574 (1968); *Lane*, 573 U.S. at 236 (collecting cases); *Mayhew*, 856 F.3d at 466; *Handy-Clay*, 695 F.3d at 544–45.  Therefore, the facts alleged here plausibly demonstrate a violation of First Amendment retaliation and compelled-speech principles, which were clearly established at the time of Barton's discharge from employment.

*Jackler*, another First Amendment retaliation case, is illustrative.  658 F.3d at 225.  It involved a municipality's firing of a police officer for refusing orders from superiors to alter his police report detailing his colleague's excessive use of force against a civilian.  *Id.* at 229.  The Second Circuit concluded that the officer "had a strong First Amendment interest in refusing to make a report that was dishonest" because "a citizen has a First Amendment right to decide what to say and what not to say, and, accordingly, the right to reject governmental efforts to require him to make statements he believes are false."  *Id.* at 240–41.  And his "refusals to accede to" his superiors' demands were "significantly different from the mere filing of his initial [r]eport," so his *refusals* were private, protected speech, rather than speech made pursuant to his official police duties.  *Id.*  Therefore, the court denied qualified immunity because it was "clearly established that the First Amendment protect[s] a citizen's decision both as to what to say and

what not to say, and that it protect[s] a government employee, including a police officer, speaking as a citizen on a matter of public concern, against retaliation for that speech except where the government's interest in the agency's proper functioning outweighed the employee's First Amendment right." *Id.* at 243 (relying on *Pickering*, 391 U.S. at 563, *Waters v. Churchill*, 511 U.S. 661 (1994), *Rankin v. McPherson*, 483 U.S. 378 (1987), and *Connick*, 461 U.S. at 138). Barton's claim here is of a piece.

In sum, considering the relevant, clearly established law from the Supreme Court, Sixth Circuit, and other circuits, *Cahoo*, 912 F.3d at 898, Barton's right not to speak on a matter of public concern in response to threats of retaliation was clearly established at the time of his firing. Neeley is not entitled to qualified immunity at the pleadings stage of these proceedings.

## IV.

For these reasons, we affirm the district court's denial of Neeley's motion to dismiss based on qualified immunity.