RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 26a0128p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

MARK STANALAJCZO,

                *Plaintiff-Appellant*,

    *v.*

BRANDONN PERRY; LYNN JOHNSON; JAN HU; JACQUES
NOR; DAN CHIEGO; ALEXANDRE DASILVA; DARNELL
KAIGLER; TAE-JU OH; BERNA SAGLIK,

                *Defendants-Appellees*.

No. 25-1690

───────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:23-cv-11527—Matthew F. Leitman, District Judge.

Decided and Filed: May 4, 2026

Before: KETHLEDGE, WHITE, and LARSEN, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:** Frank J. Lawrence, LAW OFFICE OF FRANK LAWRENCE, Bloomfield Hills, Michigan, for Appellant. Timothy H. Howlett, Angelina R. Delmastro, DICKINSON WRIGHT PLLC, Detroit, Michigan, for Appellees.

    LARSEN, J., delivered the opinion of the court in which KETHLEDGE and WHITE, JJ., concurred. LARSEN, J. (pp. 13–16) delivered a separate concurring opinion in which KETHLEDGE, J., concurred. WHITE J. (pg. 17) also delivered a separate concurring opinion.

───────────────

## OPINION

───────────────

    LARSEN, Circuit Judge. Dr. Mark Stanalajczo was an adjunct professor in a dental school clinic. During the summer of 2022, the school administration required faculty and

students who worked in the clinic to wear heavy protective gear as part of its response to COVID-19. At the same time, the school experienced difficulties with its air conditioning system. This combination led Stanalajczo and others to become concerned about overheating. Over the course of the summer, Stanalajczo "replied all" to an administrator's email about the gear, sent additional emails to administrators, students, faculty, and staff associated with the clinic, filed a health complaint against the dental school, and spoke out against the policy at an all-school meeting in a manner school authorities deemed unprofessional. The school later terminated him after he failed to watch several videos on unprofessional behavior. Stanalajczo then sued for First Amendment retaliation. The district court granted summary judgment to the Defendants. We AFFIRM.

I.

Dr. Mark Stanalajczo worked as an Adjunct Clinical Assistant Professor at the University of Michigan School of Dentistry where he supervised students in the dental clinic one day per week. In the summer of 2022, the Dental School required faculty and students working in the clinic to wear Personal Protection Equipment (PPE) as part of its on-going response to COVID-19. The PPE involved a 99% polyester gown, safety glasses, a face shield, and a head covering. Meanwhile, the Dental School's air conditioning units were not cooling at their normal capacity due to an ongoing building renovation. The combination of the warm temperatures and the PPE's lack of breathability made the PPE "extremely uncomfortable" for some individuals, which could lead to heat illness. R. 48-6, Email, PageID 845. Several students passed out from overheating, although they were not caring for patients at the time.

On June 15, 2022, Brandonn Perry, the School's Director of Safety and Infection Prevention, sent an email to the faculty, staff, and students who worked in the clinic with the subject line "Safety Reminder: Preventing Heat Illness while wearing PPE." *Id.* The email gave suggestions to prevent overheating, including a recommendation that faculty and students take frequent breaks and increase fluid intake. While the Dental School had previously provided more breathable gowns, the email stated that those disposable gowns would not be regularly available due to concerns about the environmental harm they caused. Stanalajczo decided to "reply all" to the roughly 1,000 recipients of the email and express his concerns with the policy. He wrote,

The solution is simple:

Get rid of the plastic gowns that prevent natural cooling through perspiration and move to something that allows for breathing of our bodies.

Having worked in my own office for over 30 years without anything like that and never once "catching" anything at all through years of aerosoled exposure, these gowns are ridiculous.

I suggest you all wear them around all day for hours and experience what we all have to experience . . . frankly wearing these gowns puts our health at risk . . . as your email acknowledges . . . .

So what's the procedure for filing a health complaint about these?

*Id*. at 849.  More faculty members and students then replied all to the School's email, expressing their agreement with Stanalajczo and providing additional reasons why the gowns were unnecessary.  Eventually, the Associate Dean for Patient Care, Romesh Nalliah, responded to the email thread saying, "Colleagues, let's have a schoolwide forum on the topic of gowns.  I appreciate all the comments.  This complex concern won't be solved by email."  *Id.* at 855.

The next day, Stanalajczo submitted a health complaint about the PPE gear to the Michigan Occupational Safety and Health Administration (MiOSHA).  The complaint stated that the Dental School "ma[d]e their employees wear a non breathable plastic shower curtain material while treating patients" which "create[d] a known issue with body overheating."  R. 48-7, MiOSHA Compl., PageID 859.  It then stated that the Dental School "sent emails informing employees that they know this garment is hazardous" and that the School "acknowledg[ed] that there are alternatives that won't cause these issues" but "cho[se] to ignore complaints over the health of those working and providing care to patients."  *Id.*  The Dental School responded with its view "that the allegations [do not] describe a hazardous work condition, but rather an individual comfort issue for which solutions exist."  R. 48-4, Letter, PageID 812.  Two weeks later, Stanalajczo received a letter from MiOSHA stating that the agency considered the Dental School's response satisfactory and would not be inspecting the workplace.

Meanwhile, Stanalajczo continued several email exchanges with administrators and other faculty.  Several administrators offered to meet to discuss the gear, but Stanalajczo declined.  Instead, Stanalajczo forwarded his MiOSHA complaint to all Dental School faculty members

and encouraged them to file their own MiOSHA complaints.  Stanalajczo also forwarded an administrator's email to all faculty and students, despite Stanalajczo's initial assurance to the administrator that their email chain was "to [the administrator] alone."  R. 48-13, Email, PageID 929.

The Dental School ultimately scheduled a July town hall meeting for faculty, staff, and students to discuss the protective gear.  The meeting, which was not mandatory, took place in a Dental School building with a virtual attendance option.  The School did not record the meeting in order to let people speak freely and to "hear the concerns from the community" about the protective gear.  R. 50-4, Perry Dep., PageID 1056.

At the time, Stanalajczo was on military reserve duty in Hawaii, so he joined the meeting over Zoom in his military uniform.  There were approximately 45–50 people in the audience and more than 75 people on Zoom.  Faculty, students, and administrators attended the meeting. There is no evidence that anyone from outside the Dental School attended or had access to the meeting, but it's not clear from the record whether all the people invited or in attendance worked in the clinic.  Once the meeting began, the moderators took comments from the audience, both in person and virtually.

Stanalajczo was the last person to speak.  He began his remarks by stating that the person who started the meeting was "rude" because she failed to introduce herself.  R. 48-2, Stanalajczo Dep., PageID 785.  That person was Jan Hu, the Interim Dean of the Dental School.  Stanalajczo then made some unspecified "comments about the PPE," the overheating problem, the number of complaints there had been about it, and his MiOSHA complaint.  *Id.* at 786; R. 50-2, Miller Decl., PageID 1008.  According to a faculty member present at the meeting, Stanalajczo also expressed his concern that the protective gear "adversely affect[ed] the health and safety of the faculty, students and patients."  R. 50-14, Bogrow Decl., PageID 1307.  Some attendees felt that Stanalajczo shared his opinions in an unprofessional manner.  But others felt that he expressed himself reasonably and professionally in standing up for faculty and students.

Soon after, Perry submitted an internal complaint about Stanalajczo's behavior at the meeting and in his emails.  Perry wrote that Stanalajczo made "degrading comments about the

Dean in a public meeting" and that his "demeanor and words used during the meeting were unprofessional and incendiary." R. 48-13, Internal Compl., PageID 890. Perry also complained that Stanalajczo "'responded all' to emails creating an unnecessary burden on faculty and staff to read and respond." *Id.*

Lynn Johnson, Associate Dean for Faculty Affairs and Institutional Effectiveness, conducted the Dental School's investigation into Perry's complaint. Johnson asked to interview Stanalajczo for the investigation, but he declined. Johnson ultimately concluded that Stanalajczo's email use and behavior at the meeting were unprofessional under university policies and recommended that Stanalajczo view three educational videos on workplace behavior, demonstrate course completion, and write a summary of what he learned. The report noted that failure to complete these assignments could result in termination. The Executive Committee of the Dental School agreed with her recommendations and gave final approval. When Stanalajczo declined to complete these assignments, he was terminated.

In June 2023, Stanalajczo filed the present lawsuit against Perry, Johnson, and seven other Dental School administrators. He alleged two counts of First Amendment retaliation under 42 U.S.C. § 1983: one for filing the MiOSHA complaint and one for his speech at the Dental School meeting. The Defendants moved for summary judgment on all counts. The district court granted their motion, reasoning that the MiOSHA complaint did not address a matter of public concern and that the meeting statements were made in Stanalajczo's capacity as a public employee, not as a private citizen. Stanalajczo now appeals.

II.

We review the district court's grant of summary judgment de novo. *Franklin Am. Mortg. Co. v. Univ. Nat'l Bank of Lawrence*, 910 F.3d 270, 275 (6th Cir. 2018). Summary judgment is appropriate when the movant shows that "'there is no genuine issue as to any material fact' and 'the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). We view the facts presented in the "light most favorable to the party against whom summary judgment was entered." *Id.* (citation omitted).

To prove a First Amendment retaliation claim, Stanalajczo must show that (1) he engaged in constitutionally protected speech; (2) the Defendants took an adverse action against him; and (3) there was a causal connection between the protected speech and the adverse action. *See Nair v. Oakland Cnty. Cmty. Mental Health Auth.*, 443 F.3d 469, 477–78 (6th Cir. 2006).

Stanalajczo is a public employee, so to satisfy the first element his speech must survive three First Amendment inquiries. First, his speech must have "addresse[d] a matter of public (rather than private) concern." *DeCrane v. Eckart*, 12 F.4th 586, 594 (6th Cir. 2021). Second, he must have spoken "as a private citizen rather than pursuant to [his] job duties." *Id.* Then, "even if the speech survives these two steps, the First Amendment protects the speech only if [his] interest in speaking outweighs [his] employer's interest in operating," also referred to as the *Pickering* balancing test. *Id.* (citing *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968)). Whether an employee engaged in protected speech is a question of law. *Mayhew v. Town of Smyrna*, 856 F.3d 456, 462 (6th Cir. 2017). We do not reach the second and third elements of the retaliation claim because Stanalajczo has not shown that he spoke on a matter of public concern when he submitted his MiOSHA complaint or when he spoke at the Dental School meeting.

Speech involves a matter of public concern when it relates to issues of "political, social, or other concern to the community" and is of "public import." *Connick v. Myers*, 461 U.S. 138, 146, 148 (1983). For instance, speech may involve a matter of public concern when an employee speaks out about public corruption, discrimination, or failure to follow state law. *See Myers v. City of Centerville*, 41 F.4th 746, 760–61 (6th Cir. 2022). But employee concerns that "management has acted incompetently" or complaints about "internal personnel disputes" are usually not protected. *Id.* (citations omitted). The mere fact that a government employee's speech may touch on areas of general public interest, like government operations or public health, does not necessarily mean that the speech involves a matter of public concern. *See Connick*, 461 U.S. at 149; *Nair*, 443 F.3d at 479 ("Any connection the letter has with the public interest is incidental and arises only because [the plaintiff's] job dealt with public health, which in a general sense concerns the public.").

To determine whether speech involves a public concern, we examine the "content, form, and context of a given statement, as revealed by the whole record." *Mayhew*, 856 F.3d at 467 (quoting *Connick*, 461 U.S. at 147–48). The plaintiff must show that he spoke on a matter of public concern at the time of his speech—otherwise "a flood of First Amendment retaliation claims [would] proceed on post-hoc rationalizations that were not apparently relevant in the disputed speech at issue when first made." *Naghtin v. Montague Fire Dist. Bd.*, 674 F. App'x 475, 481 (6th Cir. 2016). "'[P]assing' or 'fleeting' references to an arguably public matter do not elevate the speech to a matter of 'public concern' where the 'focus' or 'point' of the speech advances only a private interest." *Farhat v. Jopke*, 370 F.3d 580, 592–93 (6th Cir. 2004) (citations omitted).

A.

Stanalajczo cannot show that the MiOSHA complaint involved a matter of public concern entitled to First Amendment protection. The MiOSHA complaint focused on the risks of overheating for the people required to wear protective gear, namely, those working in the clinic. Stanalajczo wrote that the gear created "body overheating" and "heat illness" and that "[t]he school makes their employees wear [the PPE] while treating patients." R. 48-7, MiOSHA Compl., PageID 859. He also stated that "employee health [is] sacrificed" because the Dental School "ignore[d] complaints over the health of those working and providing care to patients." *Id.* These concerns expressed a "personal interest" in workplace conditions for Stanalajczo and those working with him. *Rodgers v. Banks*, 344 F.3d 587, 596 (6th Cir. 2003). They did not comment on an issue of "political, social, or other concern to the community." *Connick*, 461 U.S. at 146.

The surrounding context shows why. Stanalajczo filed the complaint amidst an ongoing dispute with Dental School administrators over the protective gear. Instead of waiting for the School's response, Stanalajczo explained his MiOSHA complaint to his colleagues as an "easy alternative[]" to "waiting for a response," adding "[w]ho wants their health sacrificed?" R. 48-13, Email, PageID 920. What's more, Stanalajczo's concerns were not about the safety or efficacy of protective gear in general. Stanalajczo never disputed that the clinical environment required some sort of protective gear. Instead, he expressed concern with the particular gear

provided that summer.  And he complained that the Dental School was "more concerned with the waste disposable garments create than the continued health issues many employees and students" had suffered.  *Id.*  Those kinds of concerns, even if justified, are not a matter of public concern within the meaning of the First Amendment.  Otherwise, every workplace "criticism directed at a public official" that touches on employee health or wellbeing "would plant the seed of a constitutional case."  *Connick*, 461 U.S. at 149.

Nor did Stanalajczo's MiOSHA complaint "state that a patient endangerment situation existed at the present moment" as might create a matter of public concern.  *Rahn v. Drake Ctr., Inc.*, 31 F.3d 407, 413 n.8 (6th Cir. 1994).  While the complaint uses the word "patient" twice, we look to the "point" or purpose of the relevant speech, not stray words.  *Myers*, 41 F.4th at 761; *Farhat*, 370 F.3d at 592–93.  Both instances of the word "patient" refer to clinic-worker concerns about their own comfort and health, not patient safety.  *See* R. 48-7, MiOSHA Compl., PageID 859 (noting that "[t]he school makes their employees wear a non breathable [PPE] while treating patients" and that the school "ignores complaints over the safety of those working and providing care to patients").  At most, the complaint involved an "employee['s] discontent with new *work* rules which *might* lead to a patient endangerment situation."  *Rahn*, 31 F.3d at 413 (emphasis in original); *see also Haynes v. City of Circleville,* 474 F.3d 357, 365 (6th Cir. 2007).  Because the MiOSHA complaint did not discuss matters "directly affecting the health and safety of the public," *Chappel v. Montgomery Cnty. Fire Prot. Dist. No. 1*, 131 F.3d 564, 578 (6th Cir. 1997), Stanalajczo has not shown that his speech involved a matter of public concern, *Rahn*, 31 F.3d at 412–13.[1]

## B.

Stanalajczo next argues that his speech during the Dental School meeting merits First Amendment protection.  As was true with his MiOSHA complaint, Stanalajczo's speech at the meeting is not protected unless (1) it "addresse[d] a matter of public (rather than private)

---

[1]Perhaps, as the district court noted, other remedies could have been available to Stanalajczo.  *See* R. 56, Order, PageID 1365 n.5 (citing Mich. Comp. Laws § 408.1065 (prohibiting employer retaliation when an employee files a MiOSHA complaint) and *Stegall v. Res. Tech. Corp.*, 22 N.W.3d 410, 422 (Mich. 2024) (holding that an employee who files a MiOSHA complaint and alleges retaliation may bring a claim for discharge against public policy)).  But Stanalajczo sued only under the First Amendment.

concern;" (2) he spoke "as a private citizen" (rather than as a public employee); and (3) his speech survives the *Pickering* balancing test. *DeCrane*, 12 F.4th at 594.

The district court did not address the first or third prongs of this test, concluding instead that Stanalajczo's case faltered at step two. We agree that Stanalajczo's speech at the meeting was not protected by the First Amendment. But, rather than engage the notoriously "challenging" question of whether Stanalajczo spoke "pursuant to his official duties" at the town hall meeting, *see Mayhew*, 856 F.3d at 464, we resolve the case on a more straightforward ground—Stanalajczo's speech at the meeting did not involve a matter of public concern, *see Patterson v. Kent State Univ.*, 155 F.4th 635, 644 (6th Cir. 2025) (noting that "we can affirm on any ground supported by the record" on summary judgment).

We have no recording of the events in question, so we must rely on the description of the speech given by the parties' witnesses. Stanalajczo's deposition testimony regarding the content of his speech was sparse. He testified that he made unspecified "comments [at the meeting] about the PPE and how many people have been complaining about it." R. 48-2, Stanalajczo Dep., PageID 786. He also remarked that students and staff members "thank[ed] [him] for speaking out about this topic . . . because they had been complaining to the school . . . and nobody was listening to them." *Id.* And he noted that the clinic suffered from a "shortage of faculty." *Id.* Stanalajczo's testimony never mentioned any public health or patient safety concerns. So, like his speech in the MiOSHA complaint, the "point" of Stanalajczo's meeting speech, as described by his testimony, involved merely clinic worker concerns about their own protective gear. *See Farhat*, 370 F.3d at 593; *Myers*, 41 F.4th at 761. And, as we concluded with the MiOSHA complaint, speech whose primary focus is addressed to employee grievances does not address a matter of public concern. *See Nair*, 443 F.3d at 479.

Stanalajczo's deposition testimony fits the district court's characterization of the facts. Although the district court did not decide the legal question whether Stanalajczo's speech addressed a matter of public concern, the court did make a factual determination regarding the content of the speech when evaluating the public-employee prong. There, the district court determined "the subject matter of Dr. Stanalajczo's speech." R. 56, Order, PageID 1358. The district court concluded that Stanalajczo "was addressing the sub-standard conditions in his

workplace and complaining that, among other things, the Dental School was not treating its employees properly." *Id.* at 1358–59. In short, Stanalajczo's speech concerned the "working conditions" of those who worked in the clinic. *Id.* at 1359.

Stanalajczo's opening brief on appeal does not meaningfully contest the district court's characterization of his meeting speech. Indeed, at times, it seems to embrace it. For example, the brief describes his meeting speech as expressing "his concern . . . for the health and safety of the staff at large." Appellant Br. at 24. And although his argument does sporadically mention patients, the references are focused on the health and safety of the clinic workers treating the patients, rather than on patient safety itself.

In his reply brief, however, Stanalajczo directly complains that the district court's characterization of his meeting speech failed to view the facts in the light most favorable to him. This complaint comes too late, as issues raised for the first time in a reply brief are waived. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008). But, in any event, we are not persuaded that the evidence he cites creates a genuine issue of material fact regarding the content of his speech. Stanalajczo's reply brief states that the district court "turn[ed] a blind eye to the fact that Stanalajczo's concern was for the health and safety *of those delivering patient care*." Reply Br. at 5 (emphasis added). He then cites a declaration from a faculty member, who stated that Stanalajczo "explained [at the meeting] that overseeing and delivering patient care when one is overheating or feeling like they could pass out is really a patient safety issue along with a personnel issue." RE 50-2, Miller Decl., PageID 1008.**[2]** This declaration is the closest Stanalajczo gets to connecting his speech at the meeting to a matter of public concern "directly affecting the health and safety of the public." *Chappel*, 131 F.3d at 578. But even so, this declaration does not raise an issue of material fact.

It's especially "difficult to examine the content, form, and context of any of [Stanalajczo's] comments because it is not entirely clear from the record exactly what [he] said."

---

**[2]**We note that the record contains an additional, similar, declaration from another faculty member. This faculty member stated that Stanalajczo "expressed his concerns [at the meeting] that the PPE equipment was adversely affecting the health and safety of the faculty, students and patients." R. 50-14, Bogrow Decl., PageID 1307. Stanalajczo cited this declaration in his fact section, but he did not cite the declaration when analyzing his speech at the meeting. In any case, it does not move the needle. Our analysis for both declarations is the same.

*Jackson v. Leighton*, 168 F.3d 903, 910 n.10 (6th Cir. 1999). But that doesn't mean we accept "conjecture and speculation." *Patterson*, 155 F.4th at 644. As the plaintiff, Stanalajczo had the burden to "develop the record" to show that his speech at the meeting touched on a matter of public concern. *Jackson*, 168 F.3 at 910 n.10 (citing Fed. R. Civ. P. 56(e)); *see also Chappel*, 131 F.3d at 577 (describing a plaintiff's failure to substantiate that he spoke on a matter of public concern); *Barnes v. McDowell*, 848 F.2d 725, 735 (6th Cir. 1988) (same). All we have here is a declaration from a meeting participant stating that Stanalajczo made some sort of statement connecting patient safety and personnel issues. But, as was true for the MiOSHA complaint, bare references to patient safety or patient endangerment do not by themselves make the speech a matter of public concern. *See Haynes*, 474 F.3d at 365; *compare also Nair*, 443 F.3d at 479 (determining that fleeting references to patient safety were not a matter of public concern), *with Rodgers*, 344 F.3d at 600 (determining that the plaintiff discussed a matter of public concern when two-thirds of speech discussed patient safety). So even accepting the declaration as true, Stanalajczo has not given "significant probative evidence putting the material facts in doubt." *Patterson*, 155 F.4th at 644 (citation omitted).

Here, as with the MiOSHA complaint, context shows that the overheating concern "cannot be fairly considered as relating to any matter of political, social, or other concern to the community." *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (citation omitted). Stanalajczo spoke about required protective gear amidst an ongoing dispute with Dental School administrators. He never questioned whether the clinical environment required some sort of protective gear or whether the gear was effective in preventing disease transmission. And the generalized references to "patient safety" in the declarations are not enough to show that the point of Stanalajczo's speech was to convey that a "patient endangerment situation existed at the present moment." *Rahn*, 31 F.3d at 413 n.8; *see also Zaky v. U.S. Veterans Admin.*, 793 F.2d 832, 838 (7th Cir. 1986) (noting that remarks made "in the course of internal hospital business involving the determination of which procedures would be used at the hospital" are less likely to be of interest to the public).

As unfortunate and frustrating as the conditions might have been for those who worked in the clinic, a dispute about discomfort caused by required protective gear in a clinical setting does

not rise to the level of public concern.  So it is not protected by the First Amendment.  We affirm the judgment on that ground.

\* \* \*

We AFFIRM.

———————————

**CONCURRENCE**

———————————

LARSEN, Circuit Judge, concurring.　The main opinion holds that Stanalajczo's speech is not protected by the First Amendment because it did not address a matter of public concern.　I, of course, agree.　But I write separately to express some reservations about the alternative approach taken by the district court.[1]　The district court held that Stanalajczo's speech was not protected because he "spoke at the forum in his capacity as a Dental School employee, not as a private citizen."　R. 56, Order, PageID 1359.　But, other than the subject matter of Stanalajczo's speech, the facts of this case cut against a finding that Stanalajczo spoke pursuant to his official duties.

In *Garcetti v. Cebellos*, 547 U.S. 410, 421–22 (2006), "the Supreme Court held that the government did not abridge the freedom of speech when it fired an employee for a memo he wrote as part of the job it paid him to perform." *DeCrane v. Eckart*, 12 F.4th 586, 594 (6th Cir. 2021) (citation modified).　We explained in *DeCrane* that "[t]his rule follows from basic First Amendment principles." *Id.* at 594.　Normally, the government may not engage in viewpoint discrimination. *Id.* at 595.　But the government may control its "own 'government speech,'" so when "public employees speak as agents of public employers, the employers may discipline the employees for saying something unacceptable because this speech is effectively the government's." *Id.* at 594–95 (citation omitted).

Our cases regularly recognize the difficulty of discerning just when an employee is speaking "pursuant to [his] job duties" as a public employee. *Id.*; *Mayhew v. Town of Smyrna*, 856 F.3d 456, 464 (6th Cir. 2017); *Boulton v. Swanson*, 795 F.3d 526, 533 (6th Cir. 2015).　To decide, we engage in a "practical," "fact-specific inquiry into the 'duties an employee actually is

---

[1]I do not address the teaching and scholarship exception to the *Garcetti* framework here. *See Meriwether v. Hartop*, 992 F.3d 492, 504 (6th Cir. 2021).　Stanalajczo concedes that he did not invoke this exception below; yet he asks this court to analyze and apply it on appeal.　I would not review this unpreserved argument, *see Sheet Metal Workers' Health & Welfare Fund of N. C. v. L. Off. of Michael A. DeMayo, LLP*, 21 F.4th 350, 355 (6th Cir. 2021), especially where, as Stanalajczo admits, his belated argument would require us to "expand upon" our existing caselaw, Appellant Br. at 29, and Defendants raised a qualified immunity defense below.

expected to perform.'"  *Mayhew*, 856 F.3d at 462 (quoting *Fox v. Traverse City Area Pub. Schs. Bd. of Educ.*, 605 F.3d 345, 350 (6th Cir. 2010)); *DeCrane*, 12 F.4th at 596.  We look at, among other things, "the speech's impetus, its setting, its audience, and general subject matter," and whether the speech was made within an "ordinary chain of command."  *Barton v. Neeley*, 114 F.4th 581, 589 (6th Cir. 2024) (citation modified); *see also Mayhew*, 856 F.3d at 464.

One factor driving the district court's determination that Stanalajczo spoke pursuant to his job duties was its conclusion that the "subject matter" of his speech centered on "working conditions."  R. 56, Order, PageID 1358–59.  I agree that speech focused on working conditions will often be offered in one's capacity as an employee.  *But see Boulton*, 795 F.3d at 534 ("[A] public employee may speak as a citizen even if his speech involves the subject matter of his employment." (citation omitted)).  Indeed, as the main opinion concludes, that factor can be so powerful that it alone resolves the case because the speech does not address a matter of public concern.  *See Barnes v. McDowell*, 848 F.2d 725, 735 (6th Cir. 1988) (noting that "the quintessential employee beef" is not a matter of public concern (citation omitted)).

But even when an employee does speak on a matter of public concern, that speech will still be unprotected if it is made as part of his job duties.  *Garcetti*, 574 U.S. at 421–22; *DeCrane* 12 F.4th at 594.  And it is not clear to me that speech offered in a setting similar to the Dental School "town hall" that *did* address a genuine issue of public concern would be properly characterized as unprotected "employee" speech.  A simple illustration shows why.

Imagine that a department or college of a public university calls a town hall meeting for all members of its community.  Let's use as an example the Athletic Department.  The meeting involves a large audience where both employees (coaches and staff) and non-employees (student-athletes) are invited to speak and listen.  Key decision makers, including the Athletic Director, attend.  An administrator states that participants may share "[a]ny concerns" about their "experience" and that the Department wants "feedback from everyone."  R. 50-4, Perry Dep., PageID 1056.  He conveys that the meeting will not be recorded because participants "should feel free to exhibit their concerns without fear of reprisal."  *Id*. at 1057.  The Department holds the meeting after hours, and attendance is entirely voluntary.  No members of the public are invited.  So far, these are essentially the facts of this case.

But now imagine that the topic of the town hall is focused on an indisputable issue of public concern—say, whether transgender athletes should be allowed to participate in women's sports. Two coaches speak. Each delivers thoughtful and impassioned comments—one argues in favor, the other against. Afterward, one is fired because the Department deems her position "unacceptable." *DeCrane,* 12 F.4th at 594–95. I would harbor real doubts about whether the fired coach's remarks could be characterized as the "government engaging in its own speech," and therefore entirely stripped of First Amendment protection. *Id.* at 595.

Yet this could be the implication of the approach taken below. Applying the district court's assessment of our *Garcetti* factors to the hypothetical's facts, the "impetus" for the coach's speech would have been "an invitation from [her] employer . . . to attend the forum and share [her] opinions." R. 56, Order, PageID 1357. The "setting" would be a "forum organized and conducted by [her] employer," for employees and students only. *Id.* The coach would have "made [her] statements to those at the top of [her] chain of command," including the Athletic Director. *Id.* at 1358. Relatedly, Department leadership would have been her "intended audience," although her statements would also have been "offered . . . for consideration by the other attendees" who "were all members of the [Athletic Department] community who were closely tied to [her] employment." *Id.* Finally, speaking at the voluntary, after-hours forum would have been a part of the coach's job duties because each job carries with it an "inherent duty" to communicate to those in the organization who "have the most need to know and best opportunity to investigate and correct the barriers to [one's] performance." *Id.* at 1360 (quoting *Alves v. Bd. of Regents of the Univ. Sys. of Ga.*, 804 F.3d 1149, 1165 (11th Cir. 2015)). So, regardless of the content of the speech, one might read the district court's evaluation of these factors to compel the conclusion that the coach was speaking as the government. *See DeCrane*, 12 F.4th at 594–95. I am skeptical that the *Garcetti* line of cases requires that result.

Of course, this hypothetical case is not the one the district court decided, or the one we have reviewed here. Unlike the coach in the hypothetical, who spoke on a work-related issue of undoubted public concern, Stanalajczo's remarks at the meeting focused almost entirely on the "working conditions" faced by him and others in the clinic and did not rise to the level of public concern. R. 56, Order, PageID 1359. So I agree with the district court that Stanalajczo's speech

was not entitled to First Amendment protection.  But I write separately to emphasize that it is the speech's subject matter, not its setting, that leads me to that conclusion.

---

**CONCURRENCE**

---

HELENE N. WHITE, Circuit Judge, concurring. My review of the district court's opinion leads me to conclude that it engaged in an appropriate analysis under our cases, *see DeCrane v. Eckart*, 12 F.4th 586, 595–96 (6th Cir. 2021) ("courts have looked to all of the circumstances surrounding the speech" including its "impetus," "setting," and "audience" to determine if it is protected), and *Josephson v. Ganzel*, 115 F. 4th 771, 784 (6th Cir. 2024) (analyzing the motivation, setting, and content of the public employee's speech in finding it protected), and undertook a "practical" and "fact-specific" approach, R. 56, PageID 1356 (quoting *Barton v. Neeley*, 114 F.4th 581, 589 (6th Cir. 2024)). Because I see no reason to believe that the district court would not have analyzed the case differently had Stanalajczo spoken on a matter of clear public concern, I find it unnecessary to engage with hypotheticals, including the one posed by the concurrence.